HAVANA ELECTRIC RY. CO. v. CENTRAL TRUST CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 13, 1907.)

MORTGAGES—CONSTRUCTION—TRUSTEES IN TRUST DEEDS.

> Plaintiff, having two mortgages on its property, executed to defendant as trustee a consolidated mortgage, greater in amount than the sum of the other two, and providing that a certain amount of the bonds secured thereby should be reserved by defendant to retire the first mortgage bonds when called for by plaintiff, and that defendant should hold such retired first mortgage bonds as a further security for the payment of the consolidated mortgage bonds until all the first mortgage bonds were either paid or presented to it, whereupon the first mortgage should be satisfied of record, and any of the reserved consolidated mortgage bonds remaining delivered to plaintiff. *Held*, that plaintiff was not entitled under the terms of the consolidated mortgage to demand the delivery of consolidated mortgage bonds upon the surrender of first mortgage bonds, which had been paid and canceled under a sinking fund provision in the first mortgage, but only on the surrender of enforceable first mortgage bonds.
>
> Laughlin, J., dissenting.

Submission of controversy by the Havana Electric Railway Company against the Central Trust Company of New York. Judgment for defendant.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

George B. Covington, for plaintiff.
Arthur H. Van Brunt, for defendant.

SCOTT, J. This controversy, submitted upon an agreed case, has regard to the construction to be given to certain clauses contained in a mortgage executed by plaintiff to the defendant as trustee. The plaintiff is a corporation owning certain property and franchises and operating a street railway in the city of Havana, Cuba. It has executed three mortgages upon its property and franchises to secure three issues of bonds. The first mortgage, to secure an issue of $5,000,-000 of bonds, was given to the United States Mortgage & Trust Com-

pany as trustee on July 20, 1899. The second, to secure an issue of $1,000,000 of bonds, was given to the Morton Trust Company as trustee on November 13, 1900. The third, concerning which this controversy has arisen, to secure $10,000,000 of bonds, was given to the present defendant as trustee on May 10, 1902. This last mortgage, known as the "consolidated or refunding mortgage" (and hereafter referred to as the "consolidated mortgage"), was designed to provide for refunding the first and second mortgages, and to provide for meeting certain other outstanding indebtedness of the plaintiff, and to furnish funds for necessary expenditures by the company. The seventh article of the consolidated mortgage specifies the various purposes for which the bonds to be secured by it are to be issued, and the amount of such bonds to be issued for each purpose. Subdivision 2 of that article deals with the subject of refunding the first mortgage bonds, and it is as to the construction of that subdivision that we are now called upon to pass. The first clause of that subdivision reads as follows:

"$5,250,000, face value, of the bonds secured hereby, shall be reserved to be executed from time to time, and to be authenticated by the trustee when and as called for by the company, and used only for the purpose of exchange for or retirement of, the present outstanding first mortgage bonds of the company amounting to $5,000,000, such first mortgage bonds bearing date July 20th, 1899, redeemable at $1,050 and interest for each $1,000 face value, until such first mortgage bonds shall be paid, and the mortgage securing the same canceled."

This clause, standing by itself, merely provides for the reservation of the necessary number of bonds to provide for the exchange for or retirement of the first mortgage bonds, without stating how such exchange or retirement is to be effected, or under what terms or conditions the consolidated bonds are to be executed and issued to the plaintiff. The details are furnished by the succeeding clauses of the subdivision as follows:

"The trustee shall authenticate and deliver such bonds to the company, for the purpose aforesaid, in the following manner: The trustee shall authenticate and deliver to the company bonds to the amount of $1,050, face value, for each $1,000 of said 5 per cent. first mortgage bonds, with all unmatured coupons attached that the company may present to it. * * * The trustee shall immediately stamp on the first mortgage bonds so presented to it the following: 'This bond has been deposited with the Central Trust Company of New York, trustee, pursuant to the provision of a mortgage or deed of trust executed to it by the Havana Electric Railway Company, bearing date the 10th day of May, 1902'—and the said trustee shall hold the said first mortgage bonds so presented to it as a further security for the payment of the bonds hereby secured until all the bonds of that issue shall be presented by the company, or until the same shall be paid, and in either event the said bonds shall thereupon be canceled, and the mortgage securing the same satisfied of record, and upon the cancellation of said mortgage the trustee shall authenticate and deliver to the company any of said $5,250,000 of said bonds hereby secured that may not have been theretofore authenticated and delivered."

Provision is then made whereby, if the company shall elect to call and redeem the first mortgage bonds, pursuant to a provision in that mortgage, and shall desire to anticipate the authentication of the consolidated bonds, it may do so by paying to the trustee cash at the rate of $1,050 for each $1,000 of bonds called, the trustee to

hold and use the money to meet and pay the called bonds when presented. This particular controversy arises over the presentation by plaintiff to defendant on January 18, 1907, of $120,000, face value, of first mortgage bonds, which had been paid and canceled under a sinking fund provision in the first mortgage, and the refusal of defendant to accept the canceled bonds so presented, and to authenticate and deliver for them $126,000 of consolidated bonds. The sinking fund provision contained in the first mortgage, and above referred to, required the railway company to pay to the trustee named in said mortgage certain sums annually to be applied either to the purchase of, or to the payment and redemption of said first mortgage bonds, and in either case it was provided that said bonds so bought or paid should "be forthwith canceled by the trustee and surrendered to the company." The $120,000 of bonds presented to defendant for exchange had been thus canceled.

The plaintiff's contention is that, considering the scheme of refunding as a whole, and, so considering, finding that it was a part of the scheme that consolidated bonds should be substituted for first mortgage bonds as the latter for any reason ceased to be outstanding obligations of the company, the intention of the consolidated mortgage would be carried out if consolidated bonds were to be issued as fast as and in place of first mortgage bonds that by the operation of the sinking fund were taken up and canceled. The defendant, on the other hand, contends that its duties and obligations, acting as trustee for all the consolidated bondholders, are limited and defined by the terms of the mortgage under which it acts; that, if there be any real or apparent inconsistency between the general scheme of refunding and the letter of the refunding or consolidated mortgage, the latter must control; and that under the terms of that mortgage it is not permitted to issue consolidated bonds in exchange for canceled first mortgage bonds, but only for live, valid, and enforceable first mortgage bonds, because any other construction would defeat and impair to some extent the security provided by the mortgage for the holders of the consolidated bonds. The provisions of the consolidated mortgage from which we have already quoted at length are very specific, not at all ambiguous, and appear to bear out the contention of the defendant. Indeed, these provisions are consistent only with an intention that the first mortgage bonds to be delivered to defendant in exchange for consolidated bonds shall be live, valid, enforceable bonds, and that they shall remain such in defendant's hands until the entire first mortgage issue shall have been exchanged or paid off. They are to be held by the trustee "as a further security for the payment of the (consolidated) bonds hereby secured." It is evident that a paid and canceled bond could furnish no "further security" to the holders of the consolidated bonds. Except as an evidence that it had been paid, it would have no force or effect whatever. On the other hand, a live and enforceable bond might in case of foreclosure afford valuable security to the holders of bonds secured by a third mortgage, in allowing them to participate in the lien of the first mortgage to a greater or less extent. What this additional security would amount to we cannot tell; but whatever it

would be, whether great or small, the consolidated bondholders are entitled by their contract to its benefit.

If it be said that under this construction new bonds cannot be issued in place of first mortgage bonds paid off and canceled under the sinking fund clause, the ready answer is that this very contingency seems to have been foreseen and provided for by the consolidated mortgage. The surrendered first mortgage bonds are to be held as further security "until all the bonds of that issue shall be presented by the company, or until the same shall be paid," and upon the cancellation of the first mortgage following upon either of these events the trustee is to deliver any of said authorized issue that may not have already been authenticated and delivered. The plain meaning of these provisions is that it was contemplated that some live, enforceable first mortgage bonds would be surrendered and exchanged for consolidated bonds; that other first mortgage bonds would be paid off and canceled, but not exchanged, so that, when all the first mortgage bonds had been either exchanged or paid off, there would remain to be issued consolidated bonds equivalent in amount to the first mortgage bonds that had been paid off. Furthermore, the provision that all the exchanged first mortgage bonds shall be held until all of such bonds have been either presented for exchange or paid, and then canceled, is quite inconsistent with a construction which would permit bonds already canceled to be presented for exchange. The provisions for exchanging first mortgage bonds for consolidated bonds to which we have referred are the only ones contained in the mortgage which defines the defendant's duties. If it had been desired to provide that consolidated bonds should be issued in place of first mortgage bonds paid off and canceled by the sinking fund, nothing would have been easier than to have said so. The consolidated mortgage does not say so in terms, nor by any fair construction of its language. That the plaintiff now finds that it has assumed an onerous burden, in providing for the security of its consolidated bondholders, is no reason why these holders should be deprived of any part of the security secured to them by their contract.

We are therefore of the opinion that this controversy must be determined in favor of the defendant, and that it is entitled to a judgment that the plaintiff is not entitled, under the terms of the consolidated mortgage, to demand the authentication and delivery to it of $126,000 of consolidated mortgage bonds upon the surrender to defendant of $120,000 of canceled first mortgage bonds.

PATTERSON, P. J., and INGRAHAM and CLARKE, JJ., concur.

LAUGHLIN, J. (dissenting). As I view it, the contract embodied in the consolidated mortgage is ambiguous, whether it be construed as claimed by the plaintiff or as claimed by the defendant; and the proper construction is to be ascertained by a consideration of all of its provisions. At the time the mortgage was made the entire issue of $5,000,000, face value, first mortgage bonds, was outstanding, and it was by the second subdivision of the seventh article of the con-

solidated mortgage, quoted in part in the prevailing opinion, expressly provided that consolidated bonds of the face value of $5,-250,000, should be reserved "and used only for the purpose of exchange for or retirement of" the then outstanding issue of first mortgage bonds. It was further therein provided that the consolidated bonds thus reserved were to be executed from time to time and to be authenticated by the trustee "when and as called for by the company." The value in consolidated bonds at which the outstanding issue of first mortgage bonds was to be redeemed was fixed at $1,050, face value, of consolidated bonds for each $1,000, face value, of first mortgage bonds, which would make the entire issue of outstanding first mortgage bonds equal the issue of consolidated bonds reversed to be issued in exchange for or retirement thereof. At the time the parties executed the consolidated mortgage, they were presumably familiar with the provisions of the first mortgage under which the first mortgage bonds were issued. That mortgage contained, in clause 15 thereof, a sinking fund provision by which the plaintiff obligated itself to deposit with the trustee for the bondholders on the 1st day of January, 1903, and annually thereafter until the maturity of the bonds, the sum of $32,000 and an additional sum equal to the interest for one year on the principal of the bonds acquired and canceled by the trustee for the sinking fund. It was provided that the trustee should apply the sinking fund toward the purchase of bonds secured thereby at the rate of $1,050 per bond, the bonds so purchased "to be forthwith canceled by the trustee and surrendered to the company," and to the payment and redemption at the same valuation of the principal and interest of bonds secured thereby selected for retirement as therein provided, the bonds so purchased and redeemed to be likewise canceled by the trustee and surrendered to the company. It was further provided that the payments required to be made by the company to the trustee on account of the sinking fund might be made in bonds on the basis of $1,050 and accrued interest per bond, and that bonds thus delivered to the trustee by the company in fulfillment of the sinking fund agreement should likewise be canceled and surrendered to the company.

Now the parties knew that it was inevitable that under these provisions of the first mortgage large numbers of bonds would be canceled, and yet, as has been seen, they expressly provided for the exchange of the entire issue of first mortgage bonds for consolidated bonds. This indicates that it was not intended to limit the exchange of consolidated bonds to an exchange for live first mortgage bonds. In view of the great number of canceled first mortgage bonds that would naturally be in the hands of the plaintiff from time to time, it is, I think, reasonable to infer that, if the general unqualified provisions for the exchange at the instance of the company of consolidated bonds for first mortgage bonds was to be limited to live bonds, a provision to that effect would have been inserted. The majority of the court infer that live bonds were intended merely because it is provided that the bonds should be stamped and held as security, and because, moreover, there is a general clause that after all of the

first mortgage bonds have been canceled and paid, the plaintiff shall be entitled to the balance, if any, of the issue of consolidated bonds reserved to be exchanged for first mortgage bonds. I am of opinion that such inference does not fairly follow from these clauses of the mortgage. It was intended, of course, to have the trustee hold uncanceled as security for the third mortgage bondholders any first mortgage bonds received in exchange for consolidated bonds, which at the time of their reception by the trustee were live securities; and so the provisions for stamping them and for holding them as security were incorporated. It is of no significance, I think, that those clauses were not expressly limited to live bonds; for the parties must have understood that there would be no object in thus stamping canceled bonds which had ceased to be security, and that they could not, as against the holders of outstanding first mortgage bonds, by any declaration or agreement incorporated in the third mortgage, revive canceled bonds and give them force and effect as live securities. If the parties intended that the plaintiff was to hold this vast amount of canceled first mortgage bonds without receiving in exchange therefor consolidated bonds, and was to be compelled to maintain the two sinking funds, the one under the first mortgage and the other under the consolidated mortgage, what is quite similar, but relates to the consolidated bonds, without having the benefit of the use of the consolidated bonds, to which concededly it will be entitled after the payment of the first mortgage, until the time of such payment, then I think they would have incorporated in their agreement a provision clearly indicating that intent. It is manifestly the duty of the trustee to safeguard the interests of the consolidated mortgage bondholders.

It is claimed that it is to their advantage to deprive the plaintiff of the right to the use of the consolidated bonds in place of canceled first mortgage bonds until the first mortgage is paid in full. It is impossible to decide, upon this record, whether that be so or not. We only know that such a construction of the agreement will require the plaintiff to take from its earnings more funds and appropriate the same to the maintenance of both sinking funds than if it be permitted to personally exchange canceled bonds for consolidated bonds; for, if it were permitted to receive consolidated bonds in exchange for canceled as well as live first mortgage bonds, it could use the same under the provisions of the consolidated mortgage sinking fund clause in maintaining that sinking fund, or could negotiate the same and realize thereon, which would enable it to have a greater working capital, or a capital that would enable it to make greater improvements for the proper development of its lines. Neither the first nor second mortgage bondholders could be affected by the question as to whether the plaintiff shall be permitted at this time to exchange the canceled bonds for consolidated bonds, or shall be required to wait until all first mortgage bonds are paid; and the only possible theory upon which the consolidated mortgage bondholders may be prejudiced by allowing the exchange at this time is in the event of a foreclosure before the exchange would otherwise be made, and of there being a surplus for distribution among the consolidated mortgage bondholders, but in-

sufficient to pay them in full, in which case there would be a greater number of consolidated mortgage bondholders to share in such distribution. I doubt if this possibility of injury entered into the minds of the contracting parties, and, in view of the far greater injury to the plaintiff by being deprived of the present use of the bonds, I am of opinion that the consolidated mortgage should not be construed as depriving the plaintiff of the right to exchange the canceled first mortgage bonds for consolidated bonds until after the payment of all outstanding first mortgage bonds. The insertion of the clause in the consolidated mortgage requiring the trustee to deliver to the plaintiff any unexchanged consolidated mortgage bonds reserved to be issued in exchange for first mortgage bonds after the payment and discharge of the first mortgage is explainable upon the theory that it may have been thought that some of the canceled first mortgage bonds be lost or destroyed so that an exchange could not be made.

For these reasons, therefore, I think the plaintiff should have judgment on the submission.