BEECH CREEK COAL & COKE CO. v. KNICKERBOCKER TRUST CO.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

CORPORATIONS—DEBTS—BONDS—MORTGAGES.

A corporation purchasing land subject to a mortgage securing $252,000 worth of bonds issued by the grantor, and providing for a sinking fund per year to pay them, executed a mortgage to secure an issue of $3,000,-000 of its bonds, subject to the prior mortgage, and provided that $252,000 of its bonds should be retained by the trustee, to be delivered only to retire the $252,000 of bonds of the grantor, when delivered for cancellation. Each of the bonds issued by the corporation recited that it was secured by a mortgage subject to an existing mortgage debt of $252,000, "provision for the retirement of which by means of bonds of this issue is made in said mortgage." *Held*, that the reserved $252,000 of bonds were to be issued as fast as bonds under the earlier mortgage were presented for cancellation, so that in the end there should be none of the earlier bonds outstanding, and it was immaterial whether the corporation procured the earlier bonds for cancellation, either by means of the sinking fund, or by the use of its surplus earnings, or otherwise.

Houghton, J., dissenting.

Submission of controversy between the Beech Creek Coal & Coke Company and the Knickerbocker Trust Company, as trustee. Judgment for plaintiff.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Albert B. Kerr, for plaintiff.
Edward Cornell, for defendant.

SCOTT, J. This controversy comes before us by submission upon an agreed case, from which it appears that on June 1, 1904, plaintiff executed and delivered to defendant, as trustee, a mortgage of plaintiff's real property to secure an issue of $3,000,000 of plaintiff's bonds; that said mortgage as to certain of such property was made subject to

a prior mortgage of plaintiff's grantor, the Chest Creek Land & Improvement Company, also made to defendant as trustee, securing an issue then outstanding of $252,000 of the bonds of such improvement company's mortgage, and $12,000 of its bonds were required to be redeemed at par and interest on the 1st day of October, 1900, and annually on each October 1st thereafter; that, of the $3,000,000 bonds of plaintiff, $2,748,000 were, under the mortgage securing them, provided to be forthwith certified and delivered to plaintiff, and the remaining $252,000 were provided to be retained by the trustee, to be certified and delivered only for the purpose of taking up and retiring at par $252,000 of the underlying bonds of said improvement company; that the bonds of plaintiff themselves set forth the fact that their lien was subject to the $252,000 of improvement company bonds, and that provision for the retirement of such improvement company bonds by means of the bonds of plaintiff had been made in plaintiff's said mortgage; that on October 1, 1904, and on each October 1st thereafter, plaintiff paid off and redeemed $12,000 of the underlying improvement company bonds, in accordance with the provisions of the mortgage securing them; that at the time of each of said redemptions plaintiff's bonds to a like amount, with the improvement company bonds thus redeemed, were certified and delivered to plaintiff, except on October 1, 1907, when defendant refused to certify and deliver $12,000 of plaintiff's bonds as against $12,000 improvement company bonds redeemed by plaintiff on such date.

It appears quite clearly that the purpose and intent of the parties was that the whole $3,000,000 of bonds should be ultimately issued, but that, as to the $252,000 thereof, they should be issued only in substitution for the bonds under the earlier mortgage as these should be paid off and canceled. The mortgage executed by plaintiff recited that:

"Two hundred and fifty-two (252) of the bonds secured hereby, aggregating two hundred and fifty-two thousand dollars ($252,000) of principal, to wit, bonds numbered from two thousand seven hundred and forty-nine to three thousand, both numbers inclusive, shall be retained by the trustees, and be certified and delivered to or upon the order of the coal company only for the purpose of taking up and retiring, at par, two hundred and fifty-two thousand dollars ($252,000) of bonds of the Chest Creek Land & Improvement Company. * * * No delivery of any of the said last-named two hundred and fifty-two (252) bonds of the issue hereby secured shall be made by the trustee hereunder, after certification thereof, until an equal amount of said bonds of the said Chest Creek Land & Improvement Company shall be delivered to the trustee hereunder for cancellation by it."

And each of the bonds issued under the $3,000,000 mortgage contains the statement that it is secured by a mortgage upon certain properties—

"subject, however, to an existing mortgage debt, aggregating two hundred and fifty-two thousand dollars ($252,000), now a lien upon certain of said property, provision for the retirement of which by means of bonds of this issue is made in said mortgage or deed of trust."

Nothing can be clearer, therefore, than that the intention and agreement was that the reserved $252,000 of bonds were to be issued as fast as bonds under the earlier mortgage were presented for cancella-

tion, so that in the end there should be none of the latter bonds outstanding, but all of the bonds under the later mortgage should have been issued. How the coal company procured the bonds of the earlier issue which it presented for cancellation was no concern of the holders of bonds under the later mortgage, nor of the trustees under that mortgage. It was and is immaterial whether the coal company purchased the bonds by means of the sinking fund, or by the use of its surplus earnings, or by the sale of bonds to be issued under the later and larger mortgage. All that the holders of these latter bonds were concerned with was that there should not be outstanding at any time more than $3,000,000 of bonds, including those issued under the earlier, as well as those issued under the later, mortgage. With the sinking fund agreed to be created for the redemption of the $252,000 of bonds the holders of the $3,000,000 of bonds had nothing to do. The agreement to create such a sinking fund was not made with them, nor for their benefit, and did not enter as a factor into the agreement under which the larger issue was made.

It follows, therefore, that the plaintiff is entitled to judgment; that it is entitled to receive, and the defendant should certify and deliver, bonds of the plaintiff to an amount not exceeding in all $204,000, par value thereof, in exchange for bonds of the same par value and amount of the Chest Creek Land & Improvement Company, now outstanding and which shall have been or may be redeemed under the sinking fund provision contained in the mortgage of the Chest Creek Land & Improvement Company, with costs.

Settle form of judgment on notice.

INGRAHAM, McLAUGHLIN, and LAUGHLIN, JJ., concur.

HOUGHTON, J. (dissenting). I think judgment should be directed for the defendant. The coal company bought the property of the improvement company subject to the existing mortgage. That mortgage provided that a sinking fund should be maintained from which $12,000 per annum of the bonded indebtedness should be paid. The property was mining property, the value of which was diminished as the product was removed. The sinking fund provision was what might be termed an automatic scheme for the payment and redemption of a certain number of bonds yearly. The plaintiff now demands that a new bond be issued for one that has been redeemed, paid, satisfied, and canceled.

It seems to me the defendant would be violating its duty in sanctioning such an issue. It is no answer to say that 252 bonds of the $3,000,000 issue provided for in plaintiff's mortgage were reserved for the purpose of taking up a prior mortgage. A fair interpretation of that provision is that, if the plaintiff obtained outside money and paid the prior bonds, it should then have the right to have issued a corresponding amount to take their place. It was not intended that new bonds should be issued as fast as the prior bonds were automatically paid through depletion of the mines of the improvement company. Such a course diminishes the security of the holders of the second bonds; for, when the value of the mines of the improvement company

has been sufficiently diminished by the sinking fund provision to pay off a bond, a new one is placed on the diminished property. While the holder of a second bond gets the benefit of the satisfaction of a prior one, he is compelled to share his lien with a new and substituted bond. This could not have been the intention of the parties, and is not a fair interpretation of the agreement.

I vote, therefore, that judgment be rendered for defendant.