TWIN STATE GAS & ELECTRIC CO. v. KNICKERBOCKER TRUST CO.

(Supreme Court, Appellate Division, First Department. December 31, 1909.)

CORPORATIONS (§ 469*)—BONDS—MORTGAGES—"FUNDING."

A corporation purchasing the property of another corporation, subject to a mortgage securing an issue of $500,000 of bonds, of which $425,000 were issued, executed a mortgage on such property and other property to secure an issue of $1,500,000 of its bonds. The bonds to be issued under the mortgage were called "refunding mortgage bonds," while the bonds secured by the prior mortgage were called "underlying bonds." The refunding mortgage recited that it was subject to a prior mortgage, and that the mortgagor desired to "fund" the indebtedness thereby secured, and that $500,000 face amount, of refunding mortgage bonds, should be reserved to be issued and delivered to take up at maturity, or before, the underlying bonds, and that, when the mortgagor tendered any underlying bonds, the trustee, in exchange therefor, should authenticate and deliver refunding mortgage bonds. Each of the bonds stated that it was one of a series of bonds secured by mortgage. *Held,* that the corporation was entitled to receive from the trustee refunding bonds in exchange for underlying bonds, whether canceled or not, or to exchange such bonds, whether canceled or not, for cash deposited in exchange for refunding bonds; the word "funding" meaning the process of collecting together a variety of outstanding debts against a corporation payable at short periods and substituting therefor a single form of indebtedness payable at periods comparatively remote.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 469.*

For other definitions, see Words and Phrases, vol. 4, p. 3007.]

Ingraham and Houghton, JJ., dissenting.

Submission of controversy pursuant to Code Civ. Proc. § 1279, between the Twin State Gas & Electric Company, plaintiff, and the Knickerbocker Trust Company, defendant. Judgment ordered for plaintiff.

Argued before INGRAHAM, LAUGHLIN, HOUGHTON, McLAUGHLIN, and SCOTT, JJ.

William M. Wherry, Jr., for plaintiff.
Charles H. Tuttle, for defendant.

McLAUGHLIN, J. Submission of a controversy upon agreed facts, from which it appears that in 1905 the Dover Gaslight Company, a foreign corporation, mortgaged certain of its property to the Union Safe Deposit & Trust Company, as trustee, to secure an issue of $500,000 of its bonds; that the bonds were for $1,000 each and payable on the 1st day of September, 1925, with the right reserved to the company to call and pay any or all of the bonds on the 1st day of September, 1910, or on any 1st day of March or September thereafter, by paying the principal and 5 per cent. premium and all accrued and

unpaid interest; that the mortgage further provided that during the five years immediately preceding August 31, 1910, the company would annually pay to the trustee $5,000 in cash, to be invested in securities until September 1, 1910, when the same were to be sold and the proceeds used to redeem outstanding bonds, or, at the option of the company, it might in any year purchase, in a manner prescribed, $5,000 par value of the outstanding bonds and deposit them, canceled, with the trustee in lieu of the cash; that during the next succeeding five years the company agreed that it would annually either call in and redeem, or purchase in the manner prescribed, five of the outstanding bonds and cancel them; that thereafter, for the next nine years, it would, in the same way, retire and cancel, annually, ten of the outstanding bonds; and that only $425,000 of such bonds were issued.

In August, 1906, the Dover Gaslight Company conveyed to the plaintiff, subject to its mortgage, the property covered thereby, and in October following the plaintiff executed a mortgage, covering this and other property, to the defendant, as trustee, to secure an issue of $1,500,000 of its bonds. This mortgage was designated "first and refunding mortgage," and contained a recital that part of defendant's property was subject to certain mortgages, and that plaintiff desired "to fund the indebtedness thereby secured" and to raise additional funds. The bonds to be issued thereunder were called "refunding mortgage bonds" while the bonds secured by prior mortgages were called "underlying bonds." There were then outstanding $425,000 of the Dover Gaslight Company bonds and $75,000 in bonds of another corporation.

The mortgage given by the plaintiff provided that the defendant trustee should reserve $500,000 of the "refunding mortgage bonds * * * to be issued and delivered in exchange for or to take up at maturity or before maturity" the $500,000 underlying bonds. Upon plaintiff's delivering any of these underlying bonds to the defendant, it should, in exchange therefor, authenticate and deliver to the plaintiff "refunding mortgage bonds to a face amount equal to the face amount of the underlying bonds so received by the trustee." The mortgage further provided that the plaintiff might sell the refunding mortgage bonds so reserved "in order to provide the means to purchase" outstanding underlying bonds, and that the defendant should authenticate and deliver to the plaintiff refunding bonds upon the deposit with the defendant of their face value in cash. Upon the delivery to the trustee of underlying bonds "so paid or purchased," the trustee was to return to the plaintiff the face value thereof from the cash so deposited.

In the year 1907 the plaintiff purchased five of the Dover Gaslight Company bonds, canceled them, and deposited the same with the Union Safe Deposit & Trust Company to satisfy the sinking fund provision in the gas company's mortgage. On the 8th of October, 1909, it presented these canceled bonds to the defendant and demanded that it certify and deliver, in exchange, refunding mortgage bonds of equal value. It had previously deposited with the defendant $1,000 in cash and obtained a new bond of that amount, which it sold and with the proceeds purchased one of the outstanding bonds of the Dover Gas-

light Company. This bond it canceled and deposited with the trustee for the purpose of satisfying pro tanto the sinking fund requirement for the year 1909. It also presented, on the 8th of October, this canceled bond to the defendant and demanded the return of the $1,000 previously deposited. The defendant refused to comply with either of these demands, on the ground that it was authorized to deliver refunding bonds or cash deposited for refunding bonds only in exchange for valid underlying bonds which had not been canceled. The parties now submit their controversy to this court for determination.

The question presented is whether the plaintiff is entitled to receive refunding bonds in exchange for underlying bonds, irrespective of whether the latter has been canceled or not, or to exchange such bonds, whether canceled or not, for cash deposited in exchange for refunding bonds. The plaintiff contends it is, and the defendant insists that such exchange can only be made for underlying bonds which have not been canceled.

There can, as it seems to me, be no doubt that the purpose and intent of the parties was that the whole $1,500,000 of bonds should ultimately be issued, but that as to $500,000 thereof they should be issued only in substitution for the underlying bonds as they should be paid off and canceled. The mortgage executed by the plaintiff to the defendant recites that:

"Five hundred thousand dollars ($500,000) face amount, of the refunding mortgage bonds, being numbers one (1) to five hundred (500) both inclusive ($1,000) bonds shall be reserved to be issued and delivered in exchange for or to take up at maturity or before maturity the following bonds (hereinafter collectively called the underlying bonds) with all unmatured and unpaid coupons belonging thereto. * * * Whenever the mortgagor shall tender or cause to be tendered to the trustee, and whether before or after the maturity thereof, any of the underlying bonds, with all the unmatured coupons thereunto belonging, the trustee, in exchange therefor, shall authenticate and deliver to the mortgagor, or on its order, refunding mortgage bonds to a face amount equal to the face amount of the underlying bonds so received by the trustee."

Each of the bonds issued in pursuance of the mortgage contains a statement that it "is one of a series of coupon bonds of the mortgagor, all bearing even date herewith and of like tenor and effect, except as to the principal thereof, known as first and refunding mortgage four and one-half per cent. gold bonds limited to the aggregate principal amount of one million five hundred thousand dollars ($1,500,-000) at any one time outstanding and all issued and to be issued under and equally secured by a mortgage and deed of trust dated October 1st, 1906, executed by the mortgagor to Knickerbocker Trust Company, as trustee."

The mortgage itself, given to secure the bond, recites that the same is subject "to certain mortgages, hereinafter described, and the mortgagor desires to fund the indebtedness thereby secured and to provide for acquiring and for making additions to and extensions of its plant and other property. * * *"

The evident intention and agreement between the parties was that the $500,000 of bonds were to be issued as fast as bonds under the earlier mortgages were presented to the trustee, so that in the end

there should be none of the latter bonds outstanding, but all of the bonds under the later mortgage should have been issued. That this is the plain meaning seems to me to follow not only from the provisions of the mortgage quoted, but also from the provision which provides that, "whenever all underlying bonds, except such lost or destroyed bonds for which satisfactory indemnity may have been given, shall have been surrendered in exchange for refunding mortgage bonds," the trustee shall cancel such underlying bonds and cause the mortgages securing the same to be canceled and discharged.

Unless the trustee can accept canceled bonds in exchange for refunding mortgage bonds, there is no way in which it can procure the underlying mortgages to be canceled and discharged of record, because the underlying mortgages require the cancellation of from $5,000 to $10,000 of such bonds annually, and if not canceled in that way, and the plaintiff purchases them, they would become canceled by operation of law. The purpose of the mortgage to the defendant was not to reduce the indebtedness of the Twin State Gas & Electric Company, but to substitute a single indebtedness for all the different classes of indebtedness of the company; indeed, one of the purposes recited in the mortgage is "to fund the indebtedness" secured by the underlying mortgages. The word "funding," as thus used, has a well-defined and definite meaning, viz., "the process of collecting together a variety of outstanding debts" against a corporation, payable at short periods, and substituting therefor a single form of indebtedness "payable at periods comparatively remote." Ketchum v. City of Buffalo and Austin, 14 N. Y. 356; People v. Carpenter, 31 App. Div. 603, 52 N. Y. Supp. 781.

It is no concern of the defendant, therefore, when the plaintiff presents underlying bonds in exchange for refunding bonds, whether the underlying bonds have been canceled or not, or how the plaintiff obtained possession of them. All it has to do is to see that the bonds presented are underlying bonds. All that the holders of the bonds given by the mortgage to the defendant are interested in is that there shall not be outstanding at any time more than $1,500,000 of bonds, including those issued under this mortgage, as well as those issued under the prior mortgages.

The case, in principle, cannot be distinguished from Beech Creek Coal & Coke Company v. Knickerbocker Trust Co., 127 App. Div. 540, 111 N. Y. Supp. 1030.

It follows, therefore, that the plaintiff is entitled to judgment: That it is entitled to receive, and the defendant should certify and deliver, bonds of the plaintiff to an amount not exceeding in all $500,000 par value thereof, in exchange for bonds of the same par value and amount of the Dover Gaslight Company and the Brattleboro Gaslight Company now outstanding, and which shall have been, or may be, redeemed under the sinking fund provision contained in the mortgages securing such bonds, or which the plaintiff may procure by purchase or otherwise; the form of the judgment to be agreed upon or settled upon notice.

LAUGHLIN and SCOTT, JJ., concur.

INGRAHAM, J. (dissenting). I do not concur with Mr. Justice McLAUGHLIN. The clause of article 11 of the mortgage provides that:

"Whenever the mortgagor shall tender or cause to be tendered to the trustee, and whether before or after the maturity thereof, any of the underlying bonds, * * * the trustee, in exchange therefor, shall authenticate and deliver to the mortgagor, or on its order, refunding mortgage bonds to a face amount equal to the face amount of the underlying bonds so received by the trustee. * * * Unless canceled in accordance with the foregoing provisions hereof, and until so canceled, all underlying bonds delivered to the trustee shall be held by the trustee, without impairment of the lien of such underlying bonds, as additional security under this indenture, and upon the trusts herein declared; and interest on the underlying bonds, when and as received, shall forthwith be paid to the mortgagor by the trustee."

I think it was here intended that the trustee should not be required to deliver refunding bonds except when bonds which were valid and which could be held by the trustee as additional security for the bonds issued under this mortgage were delivered. After a bond has been paid by the obligor and actually canceled, it is no longer, strictly speaking, a bond, and what this provision of the mortgage intended to provide, as it seems to me, was that the underlying bonds for which a refunding bond was to be issued was a live bond which could be held by the trustee as additional security for the obligation issued under this mortgage. The parties must be assumed to have contracted in relation to the existing situation and the provisions of the mortgage to secure the underlying bonds. The provision that the lien of the underlying bonds for which refunding bonds were issued should be continued in the hands of the trustee as security for the refunding bond was important for the security of the bonds issued under this mortgage for such underlying bonds which had been delivered to the trustee and was held by it would be entitled to participate in any foreclosure of the mortgage given to secure the underlying bonds. If but part of the underlying bonds had been paid off, then it would have been an important additional security to the refunding bonds to allow the trustee to participate in the proceeds of any sale under the mortgage to secure the underlying bonds. I do not think, therefore, that the defendant was bound to deliver a refunding bond except upon delivery to it of a bond which was an actual existing obligation and which was secured by one of the underlying mortgages.

I think, therefore, that the defendant is entitled to judgment.

HOUGHTON, J., concurs.