CHARLESTON ILLUMINATING CO. v. KNICKERBOCKER TRUST CO.

(Supreme Court, Appellate Division, First Department. May 6, 1910.)

CORPORATIONS (§ 469*)—BONDS—MORTGAGES.

    A corporation purchasing the property of another corporation, subject to a mortgage securing an issue of $60,000 of bonds, of which $53,000 were unpaid, executed a refunding and improvement mortgage to secure an issue of $250,000 of bonds, styled "refunding and improvement bonds," $180,000 of which were to be reserved to be issued and delivered in exchange for, or to take up at or before maturity, among other obligations, the $53,000 bonds, etc. The mortgage provided for the delivery of refunding bonds in exchange for underlying bonds on the delivery of underlying bonds before or after maturity, and provided that refunding bonds should be authenticated and delivered by the trustee in exchange for underlying bonds paid or purchased by the corporation, etc. *Held*, that the corporation, on paying underlying bonds at their maturity out of its general fund, and canceling and depositing them with the trustee pursuant to the mortgage securing them, with a demand that the trustee certify and deliver in exchange therefor refunding bonds of equal value, was entitled to refunding bonds.

    [Ed. Note.—For other cases, see Corporations, Dec. Dig. § 469.*]

    Ingraham, P. J., dissenting.

Submission of controversy under Code Civ. Proc. §§ 1279–1281, between the Charleston Illuminating Company and the Knickerbocker Trust Company as trustee. Judgment ordered for plaintiff.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

William M. Wherry, Jr., for plaintiff.

Charles H. Tuttle, for defendant.

MILLER, J.   The parties to this submitted controversy agree that it is precisely like Twin State Gas & Electric Company v. Knickerbocker Trust Co., 135 App. Div. 467, 120 N. Y. Supp. 764; but the defendant asserts that that case conflicts with Havana Electric Ry. Co. v. Central Trust Co., 122 App. Div. 829, 107 N. Y. Supp. 680, recently affirmed by the Court of Appeals on the opinion below (91 N. E. 1114). The two cases referred to will be found upon a critical examination to be distinguishable.   Therefore the plaintiff in this case should have judgment on the authority of the Twin State Gas & Electric Company Case, unless we are prepared to overrule that case.   We are persuaded upon a re-examination of the question that the ruling of that case was right, and should be adhered to.

It may be well to state the essential facts of this case, though that be but a restatement of the facts of the Twin State Gas & Electric Company Case.   On the 1st of March, 1900, the Charleston Light, Heat & Power Company made a mortgage to the American Trust & Savings Bank as trustee to secure an issue of bonds in the sum of $60,000, to mature on different dates between September 1, 1901, and September 1, 1922.   On the 25th of March, 1905, the Charleston Light, Heat & Power Company conveyed the property covered by said mortgage to the plaintiff, subject to the lien of said mortgage.   On that day $53,000 par value of said bonds were outstanding and unpaid. On the same day the plaintiff executed and delivered to trustees for whom the defendant was later substituted a mortgage styled, "a refunding and improvement mortgage," to secure an issue of $250,000 of bonds, styled, "refunding and improvement mortgage bonds," $180,-000 of which were to be reserved "to be issued and delivered in exchange for or to take up at maturity or before maturity," (1) $53,000 face amount of the bonds hereinbefore referred to, (2) $127,000 face amount of bonds of the Charleston Gas & Electric Company, which latter we are not concerned with now, but which it may be inferred were secured by a mortgage on property acquired by the said plaintiff on or about said 25th of March, 1905.   The mortgage provided for two methods of exchange:   (1) Whenever the mortgagor tendered to the trustees, "whether before or after maturity thereof, any of the underlying bonds, with all the unmatured coupons thereunto belonging," the trustees were to authenticate and deliver to it refunding bonds of equal face amount to the underlying bonds so delivered.   (2) The mortgagor might sell refunding bonds to provide means for purchase underlying bonds.   In such case the trustees were to authenticate and deliver refunding bonds simultaneously with the deposit with them of a cash equivalent therefor, and out of such cash they were "on demand of the mortgagor and upon delivery to the trustees of the underlying bonds *so paid or purchased* by the mortgagor" to pay to the mortgagor a sum equal to the face amount of the underlying bonds

*"so paid or purchased."* The mortgage further provided that, whenever all underlying bonds except lost or destroyed bonds, for which satisfactory indemnity had been given, should be surrendered in exchange for refunding bonds, the trustees, "at the request of the mortgagor, should cancel such bonds and cause the mortgages or trust deeds securing the same to be canceled and discharged of record." It also contained the following provision:

"Unless canceled in accordance with the foregoing provisions hereof, and until so canceled, any underlying bonds delivered to the trustees shall be held by the trustees, without impairment of the lien of such underlying bonds, as additional security under this indenture and upon the trusts herein declared."

This controversy involves two of the underlying bonds issued by the Charleston Light, Heat & Power Company, of the par value of $1,500, which matured September 1, 1909, and were at maturity paid by the plaintiff out of its general funds, and canceled and deposited with the trustee, pursuant to the provisions of the mortgage securing them, and which were thereafter and on the 1st of December, 1909, tendered to the defendant by the plaintiff with a demand that the defendant certify and deliver in exchange therefor refunding bonds of equal value, which tender and demand were refused.

The mortgage in question differs from the mortgage considered in the Havana Electric Railway Company Case in several important particulars: (a) In that case the mortgage merely provided for the authentication and delivery of refunding bonds in exchange for underlying bonds until such bonds should be paid and the mortgage securing the same canceled. This mortgage provides for such exchange upon the delivery of underlying bonds "whether before or after the maturity thereof." (b) That mortgage referred only "to the present outstanding first-mortgage bonds." This mortgage expressly provides that refunding bonds shall be authenticated and delivered by the trustees in exchange for underlying bonds "paid or purchased by the mortgagor." (c) That mortgage provided for the cancellation of the underlying bonds and the mortgage securing them when all of said bonds were presented to the trustee *or paid.* This mortgage provides for such cancellation only upon the request of the mortgagor when all the underlying bonds except lost or destroyed bonds have been surrendered to the trustee in exchange for refunding bonds. (d) That mortgage provided for the authentication and delivery of any of the refunding bonds, not theretofore authenticated and delivered upon the cancellation of the underlying bonds and the mortgage securing them. This mortgage contains no provision on the subject. It is true that both mortgages contain a provision that the underlying bonds delivered to the trustees in exchange for refunding bonds should be held by them as additional security in this case, unless and until canceled in accordance with the provisions of the mortgage, in that case "until all the bonds of that issue shall be presented by the company, or until the same shall be paid." Thus it appears that the parties in this case contemplated the delivery of all the underlying bonds in exchange for refunding bonds, while the parties in that case contemplated that the

bonds paid at maturity should not be delivered in exchange for refunding bonds. All of the refunding bonds were to be issued in both cases in this case as bonds, *purchased* or *paid*, were delivered to the trustee, in that, as live outstanding bonds were delivered from time to time, the balance when all the underlying bonds were *delivered* or *paid*.

No doubt it was intended by the provision for holding the underlying bonds as further security to prevent the holders of any underlying bonds not delivered from gaining an unfair advantage by the surrender and cancellation of other bonds; and the absence of such a provision in the mortgage considered in the case of Beech Creek Coke & Coal Co. v. Knickerbocker Trust Co., 127 App. Div. 540, 111 N. Y. Supp. 1030, distinguishes that case from this. Standing alone, that clause strongly supports the defendant's contention that the trustee was only to surrender refunding bonds for outstanding, live underlying bonds; but, when considered with reference to the other provisions of the mortgage in question, that clause may be given full force and effect by considering it as applicable only to the bonds *purchased*. The cancellation of any of the issue of bonds would, of course, increase the security of the outstanding bonds, but so would the payment of any of them at maturity. This mortgage plainly contemplated that the mortgagor might purchase outstanding bonds before maturity or pay them at or after maturity from its general funds according to the provisions of the mortgage securing them. In either event, such bonds —i. e., those purchased or paid—were to be delivered to the trustee in exchange for refunding bonds. Plainly there is no valid distinction between a paid and a canceled bond. While the defendant contends that the word "bond" of itself imports an outstanding obligation, as used in this mortgage, the words refers to the instrument itself, not to the obligation evidenced by the instrument. As was said in the Twin State Gas & Electric Company Case, it was plainly the intention of the parties that the whole $250,000 of bonds provided for should ultimately be issued, $180,000 of them in substitution for that amount of outstanding obligations, $70,000, evidently to provide money for improvements. By the express terms of the mortgage, refunding bonds were to be exchanged for underlying bonds *paid or purchased before or after maturity,* and the mortgage, securing such underlying bonds, was only to be canceled when all of the bonds so paid or purchased were delivered to the trustee of the refunding mortgage, and by that method only could the entire amount of refunding bonds be issued. Those express provisions are not modified by the clause with reference to the holding of the underlying bonds, as further security, in view of the fact that such clause, from the nature of the case, can only refer to the bonds purchased before maturity.

The judgment should be for the plaintiff in accordance with the terms of the stipulation.

LAUGHLIN, CLARKE, and SCOTT, JJ., concur.

INGRAHAM, P. J. (dissenting). There is no substantial difference between the mortgage upon which the question is presented in this action and that before us in Twin State Gas & Electric Com-

pany v. Knickerbocker Trust Company, 135 App. Div. 467, 120 N. Y. Supp. 764. I think, therefore, the question that is presented in this case is substantially the same as that presented in the Twin State Gas & Electric Co. Case, and for the reasons stated in my dissent from the judgment directed in that case I think the defendant here is entitled to judgment.

I therefore dissent.